EASTERN DIST.
*April,* 1838.

HENNEN
*vs.*
HENNEN.

12L 190.
45 990

HENNEN *vs.* HENNEN.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

A person may change his domicil at will; and any restraint on his choice would be an abridgment of his rights; so, every citizen is allowed to select his domicil accordingly, as his interest, inclination, or even caprice may direct.

It is sufficient to effect a change of domicil, if the act of residing in another parish be combined with the intention of fixing a residence there, even when the party resides alternately in each parish.

Where a resident of the parish of Orleans elects his domicil in the parish of St. Tammany, and makes his declaration in writing before the parish judges of the parish from which and to which he removes, according to law, and resides alternately in each, has a dwelling house and establishment, and transacts business in each, but holds offices and votes in the latter: *Held,* that it is a complete and legal transfer and change of domicil, so as to entitle him to be sued in the parish to which he has transferred it.

This is an action to annul and set aside an account and a notarial act, as having been ratified and signed by the plaintiff, through error, &c., and that the defendant be required to render a new account of his administration as tutor, and pay over a large sum which is alleged will be due on a full settlement.

The defendant being sued as a resident of the city and parish of New-Orleans, pleaded a declinatory exception, averring, that his legal domicil was in the parish of St. Tammany, in which place alone he was suable. He prayed that the suit be dismissed.

The evidence taken on the trial of this exception, is fully stated in the opinion of this court, which follows.

The district judge decided against the defendant, and overruled the exception, principally on the construction of the 42d and 43d articles of the Louisiana Code.

*Article* 42. "The domicil of each citizen is in the parish wherein his principal establishment is selected."

" The principal establishment is, that in which he makes his habitual residence ; if he resides alternately in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereinafter prescribed, any one of the said places where he resides may be considered as his principal establishment, at the option of the person whose interests are thereby affected."

*Article* 43. "A change of domicil is produced by the act of residing in another parish, combined with the intention of making one's principal establishment there."

*Article* 44. "This *intention* is proved by an express declaration of it before the judges of the courts of the parishes from which, and to which he shall intend to remove.

" This declaration is made in writing, is signed by the party making it, and registered by the judge."

The declinatory exception being overruled, the defendant answered to the merits. The cause was then tried, and on the evidence and arguments of counsel, and a charge from the judge, it was submitted to a jury on one branch of the subject ; and a verdict having been returned for the plaintiff against the defendant, after an unsuccessful attempt to obtain a new trial, from judgment confirming the verdict, the defendant appealed.

*Conrad* and *Grymes*, for the plaintiff.

*Hennen* (*in propriâ personâ*) and *Preston*, for the defendant.

*Carleton, J.*, delivered the opinion of the court.

At the trial of this cause, our attention was first drawn to the declinatory exception taken by the defendant, who insists that his domicil is in the parish of St. Tammany, and that he is not suable in the parish of Orleans.

The exception is as follows :

" And now the said Alfred Hennen appears and makes a declinatory exception to the jurisdiction of this honorable court, and says, that he is a resident of the parish of St. Tammany and therein domiciliated, and can be sued in the parish

of St. Tammany, his legal residence, only ; and that he is not liable to be sued in the parish of Orleans, and in this honorable court, protesting at the same time that he does not confess any of the allegations in the petition, which would render him liable to pay the petitioner any sum of money, but on the contrary expressly denying the same ; wherefore, this defendant prays, that this his declinatory exception may be sustained and the suit dismissed."

This plea being overruled by the court, defendant answered to the merits, upon which there was judgment against him, and he appealed.

Many witnesses were examined by both parties, on the question raised by this exception, who stated in substance, that the defendant had, since the year 1822, practised as attorney and counsellor at law in the District Courts, held in that parish, and sometimes at its special sessions ; that his family resided there generally during the summer ; that he owns lands in that parish, on which he built a commodious and expensive dwelling house, in the year 1829 ; established a plantation with between twenty and thirty slaves, cattle, horses, carriages, &c., and employs an overseer by the year ; that the house and the other necessary buildings are worth from ten to fifteen thousand dollars, and appear to have been intended for a permanent place of residence ; that before the house was built, the defendant and his family boarded or lived in a hired house at Covington ; that he always resided in New-Orleans during the winter and spring, where he is, and has been for many years a member of the bar, engaged in an extensive practice ; that he bought, in 1831, the house in New-Orleans, where he lives with his family and servants, has an extensive library, and his name on a sign fixed at his door ; that he owns other real property of considerable value in the city ; that he voted in St. Tammany in 1828, at the presidential election, as did other persons from the city ; that he acted as an overseer of the road in that parish, in 1830 and 1831 ; that his house, which remains furnished the year round, is calculated for a summer as well as a winter residence ; that he continues to enlarge and increase his posses-

sions there ; that he has buried there the remains of his deceased wife, child, and father ; that since his declaration of change of domicil, he has always publicly spoken of St. Tammany as his permanent place of residence ; since his house was built, he has generally gone thither earlier with his family than before ; he keeps no office there, but is sometimes called on for professional business ; that he occasionally visits his plantation during winter, but not to reside there ; he generally returns to the city when the sickly season is over, as other persons do; that other citizens of New-Orleans have purchased summer residences in that parish, and return about the same period ; that within the last four or five years he declined voting in New-Orleans, alleging his residence to be in St. Tammany ; that he has a pew in the Presbyterian church in the city, of which he is a member ; that he spends sometimes sixth months of the year in St. Tammany, and never less than four; that his house in New-Orleans is worth twenty-two thousand dollars, and remains permanently furnished the year round; that he had a box in the post office in the city, and caused his letters to be forwarded by Madisonville ; that he is a director of the Mississippi Marine and Fire Insurance Company and Orleans Navigation Company, in both of which he is the owner of stock ; that his notes have been rejected at bank because of his change of domicil ; and that he has been objected to for the same cause as security on an appeal bond.

The plaintiff also produced several notarial acts, signed in 1832–3, by the defendant, in which he is styled as of New-Orleans.

The defendant produced in evidence, an extract from the records of the police jury of St. Tammany, showing he had been appointed captain of the police, and overseer for the roads in that parish, in the years 1830 and '31.

Also, several petitions presented to the courts in New-Orleans, in which he states himself as residing in St. Tammany.

Also, the following declarations before the respective parish judges of the parishes of Orleans and St. Tammany:

*Louisiana, First Judicial District, Parish of New-Orleans :*

To the honorable James Pitot, judge of the Parish Court for the city and parish of New-Orleans; the declaration of change of domicil of Alfred Hennen, heretofore a resident of the parish aforesaid : I, the undersigned, Alfred Hennen, do hereby declare, that it is my intention to change my domicil from the parish aforesaid, to that of St. Tammany, where I intend living with my family, and where I shall make my principal establishment, and this declaration I pray may be recorded, as required by law.

(Signed,)            ALFRED HENNEN.

New-Orleans, 13th July, 1829.

ORDER.—Let this declaration be filed and recorded, as prayed for according to law. (Signed,) JAMES PITOT.

New-Orleans, July 13th, 1829.

*Louisiana, Parish of St. Tammany :* To the honorable Jesse R. Jones, judge of the Parish Court for the parish of St. Tammany; the declaration of a change of domicil of Alfred Hennen, heretofore a resident of the parish of New-Orleans, and the election of his future domicil in that of St. Tammany.

I, the undersigned Alfred Hennen, do hereby declare that it is my intention to change my domicil from the parish of Orleans to that of St. Tammany : I do hereby elect the said parish of St. Tammany, as my future domicil, where I intend living with my family, and where I intend to make my principal establishment, for which purpose, I pray that this my declaration, accompanied by a certified copy of that made in the parish of New-Orleans, hereto annexed, to make part thereof, may be recorded in this parish of St. Tammany, according to law.      (Signed,)      ALFRED HENNEN.

Parish of St. Tammany, 17th July, 1829.

Let this declaration be filed and recorded according to law, bearing date July 17th, 1829.

JESSE R. JONES, *Parish Judge.*

Duly recorded, July 17th, 1829.—Jesse R. Jones, Parish Judge.

EASTERN DIST.
*April*, 1838.

HENNEN
*vs.*
HENNEN.

If the testimony of the witnesses heard in this cause, render it doubtful in which parish the defendant resides, the law has put it in his power, in such case, to solve the question for himself by his own declaration. *La. Code, article* 42.

And by articles 43 and 44, it is declared, that " A change of domicil is produced by the act of residing in another parish, combined with the intention of making one's principal establishment there." " This intention is proved by an express declaration of it, before the judges of the parishes, from which and to which he shall intend to remove. This declaration is made in writing, is signed by the party making it, and registered by the judge."

The defendant appears to have complied strictly with the forms of law here prescribed.

In the case of Tanner *vs.* King, 11 Louisiana Reports, 175, we said that a man might change his domicil at will, and any restraint upon his choice would be an abridgment of his rights. The law seeks for the intention, and allows every citizen freely to select his domicil accordingly, as his interest, inclination, or even caprice, may direct.

It is sufficient if the act of residing be combined with the intention.

The Roman law cited by plaintiff's counsel, does not materially vary from our own. *Domicilium re et facto transfertur, non nuda contestatione, sicut in his exigitur, qui negant se posse ad munera ut incolas vocari. Deg. lib.* 50, *t.* 1, *l.* 5, section 20.

He also cited Code Justinian, lib. 10, t. 39, l. 7, and Sirey, vol. 12, part 2, page 72, and several other authorities, which, on a close examination, do not appear to have any direct bearing upon the point at issue.

Neither the Roman Code nor our own, declares how long a residence is necessary to effect the change ; but only, that the act of residing, must be combined with the intention.

The laws of France, from which those of Louisiana on this subject are derived, are more explicit.

In a case reported by Sirey, tome 13, p. 354, it is said : *Peu importe qu'il n'y ait demeuré que trois semaines ; le séjour*

A person may change his domicil at will ; and any restraint on his choice would be an abridgement of his rights ; so, every citizen is allowed to select his domicil accordingly, as his interest, inclination or even caprice may direct.

It is sufficient to effect a change of domicil, if the act of residing in another parish be combined with the intention of fixing a residence there, even when the party resides alternately in each parish.

EASTERN DIST.
*April*, 1858.

HENNEN
*vs.*
HENNEN.

Where a resident of the parish of Orleans elects his domicil in the parish of St. Tammany, and makes his declaration in writing before the parish judges of the parish from which and to which he removes, according to law, and resides alternately in each; has a dwelling house and establishment, and transacts business in each, but holds offices and votes in the latter: *Held*, that it is a complete legal transfer and change of domicil, so as to entitle him to be sued in the parish to which he has transferred it.

*plus ou mois long est indifférent pour acquérir domicile.   On doit seulement consulter l'intention.   Denisart, a mot domicile, No.* 19, dit, " *qu'un seul jour de demeure dans un lieu, avec intention d'y fixer un domicile, suffit pour l'établir.*"

*Dargentré dit aussi: Una sola die constituitur domocilium modi de voluntate appareat, suivant la maxime, domicilium potius est amimi quam facti.  L'art* 103 *du Code Civil a adopté ce principe.*

*Touillier, vol.* 1, *page* 323, *No.* 372, observes, *La résidence la plus longue ne prouve rien, si elle n'est pas accompagnée de la volonté, tendis que, si l'intention est constante, elle opère le changement avec la résidence la plus courte, ne fût-elle que d'un jour ; car du moment que le fait concourt avec l'intention, il forme ou change le domicile sans aucun délai.*

Duranton expresses the same opinion at No. 357, in his remarks upon article 103 of the Napoleon Code : *Des qu'il y a le fait d'habitation réelle dans le nouveau lieu, il y a translation de domicile, · quelque court que soit le temps écoulé depuis que la personne y réside ; par exemple, un jour seulement.*

The defendent in this cause has shown, that he resided occasionally six months of the year in the parish of St. Tammany, and at least *four months every year for a series of years.*

We think, that under the provisions of our code, upon whose rightful interpretation the decision of this question must depend, he has fully made out his transfer of domicil to that parish, and that the court erred in overruling his exception.

The opinion here expressed, withdraws from our consideration the merits of this protracted and painful controversy, which, it is to be regretted, should have ever arisen under our wise and excellent system of laws.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be avoided and reversed, and that the plaintiff's petition be dismissed, he paying costs in both courts.