### JOHN RIST *v.* JOHN HAGAN.

The purchaser of a slave, who institutes a redhibitory action on the ground that the slave is a runaway, is not bound to prove that the vice existed before the sale, when discovered within two months thereafter; but this presumption ceases where it is proved that unusual punishments have been inflicted on the slave. Stat. 2 January, 1834, s. 3.

One who has given notice in writing of his intention to become a resident of the State to the parish judge of the parish in which he proposes to reside, but who has not resided within it one year without interruption, not having acquired a residence in the manner authorized by the stats. of 7 March, 1816, s. 2, and 16 March, 1818, s. 1, must be considered as " *not domiciliated in the State* " within the meaning of art. 2512 of the Civil Code; and, in case of his absence from the State within a year from the date of a sale made by him, the prescription of one year against redhibitory actions will be suspended as to him during his absence.

APPEAL from the District Court of the First District, *Buchanan,* J.

*Peyton* and *I. W. Smith,* for the plaintiff.

*H. H. Strawbridge,* for the appellant.

SIMON, J.   This is a redhibitory action based upon the allegation that one of three slaves, purchased by the plaintiff from the defendant, by notarial act passed on the 21st of January, 1839, and warranted against all redhibitory maladies and vices prescribed by law, was at the time of the sale in the habit of running away, and that this vice was discovered within two months after the sale.   The plaintiff further states, that the defendant had knowledge of the defect, and neglected to declare it; that the slave, who is named John, was also afflicted, at the time of the sale, with bodily maladies, which were also within the knowledge of the vendor, who did not declare them; and that he, plaintiff, has been greatly disappointed, and put to much inconvenience, trouble, labor and expense, in consequence of the said defects and vices of the slave John, whereby he has been obliged to pay the sum of $100 for apprehending him when runaway, also, to pay $300 for physicians' services and medicines, and has sustained damages to the amount of $500; all which sums, added to $1100, the price of the negro, make an amount

of $2000, for which the plaintiff claims judgment, and the annulling and cancelling of the sale.

The defendant joined issue by first denying that the habit of running away in the slave John, existed at the time of the sale; he also denies that it was discovered within two months after the sale, and says that, if it ever did appear either before or after two months, it was occasioned by severe and unusual treatment of the slave, on the part of the plaintiff. The defendant further denies the existence of any disease in the slave either before or, after the sale; avers, that he is and was before the sale, a *bona fide* resident of New Orleans; and pleads prescription.

Judgment was rendered by the inferior tribunal in favor of the plaintiff, annulling the sale, and condemning the defendant to pay the sum of $1100, with interest, &c.; and from this judgment the defendant has appealed.

The evidence establishes satisfactorily, that the slave John has run away several times, at divers periods, from the plaintiff, since the sale; but there is no proof of his having been in the habit of running away before the sale. It is shown, however, that he ran away twice at least within the two first months after his purchase, and was absent about ten days the first time, and about two weeks the second time. He was taken, on one of these occasions, ten miles from home; and the witness adds, that the slave's general habits were those of a great runaway, and great drunkard and thief. Another witness testifies, that the negro John was well treated, and not punished either cruelly or unusually; that he was whipped once after having run away and been *caught*, and that he had no cause whatever for running away, and would not have been whipped if he had not run away. Another swears, that the negro ran away soon after the plaintiff bought him; was absent weeks at a time; was in the woods nearly all the time when not sick; and is *a practical runaway negro*.

According to a law of 1834, (Bullard & Curry's Digest, p. 792,) the buyer of a slave who institutes a redhibitory action on the ground that such slave is a runaway, is not bound to prove that the vice existed before the date of the sale, when such vice has been discovered within two months after the sale. It is further

provided in that law, that, where unusual punishments have been inflicted, the legal presumption in favor of the buyer shall cease. Here, the proof of the discoveries being made within two months, is positive; the slave was not unusually punished; and it is proved, that the punishment which he received, was inflicted after his having run away several times. It is clear, therefore, that the punishment was not the cause of his running away, but the consequence of the existence of a vice in the slave for which the plaintiff was compelled to chastise him. It is shown also that, at the date of the sale, the slave had been less than eight months in the State; and this circumstance, under the last *proviso* of the law above quoted, puts this case under the immediate application of the presumption therein provided for.

But the next question is that of prescription, pleaded under the 2512th article of the Civil Code, the second exception to the operation of which is, " when the seller not being domiciliated in the State, shall have absented himself before the expiration of the year following the sale, in which case, the prescription remains suspended during his absence." The sale in question was passed on the 21st of January, 1839, and the citation was served in this suit on the defendant, on the 29th of January, 1840.

Now, by referring to the 2d section of an act of the Legislature of the 7th March, 1816, (B. & C.'s Digest, p. 286,) and to the 1st section of a law of the 16th of March, 1818, (B. & C.'s Digest, p. 287,) we find, 1st; that "residence within the State shall not be considered as acquired, until the individual coming into the State *shall have remained within the same for twelve months* following the day of his notice in writing to the parish judge of the parish where he proposes to reside, of his intention to acquire residence;" and 2d, that the preceding law was so amended that the notice to the parish judge was no longer indispensable, provided proof was made before any jury or justice of the peace, of *one year's uninterrupted residence,* and of the occupation of a house, &c. Here, it is true, the defendant gave the notice of his intention to reside in Louisiana to the parish judge of New Orleans, on the 29th of January, 1838; but that is less than one year previous to the sale; and the evidence shows that he had remained in the State only about eight months between the two dates. It is further

Rist v. Hagan.

shown, that the defendant is in the habit of leaving the State in the summer and returning in the winter season, without leaving any agent to represent him ; and his witnesses say, that he was absent from the State during the summer months of 1839; that he spent that summer in Maryland and Virginia ; had no one in New Orleans to attend to his business ; that he left, that summer in June, and returned in October; and that the defendant, since his declaration, has always passed the summer out of the State. It is clear, therefore, that at the time this suit was instituted, the defendant could not be considered as being domiciliated in the State, as he had not acquired the uninterrupted residence of one year, required by the laws of 1816 and 1818. Under those laws, the declaration made to the parish judge cannot fix the residence or domicil of the party in this State, unless it has been followed by an uninterrupted residence of one year therein ; and this is required in all cases where a person, coming from a foreign country, or from any one of our sister States, wishes to acquire a residence within the limits of Louisiana. In the case of *Guilliet* v. *Erwin*, 7 La. 580, this court held, that where a whole year has not expired, within which a plaintiff had a right to act and could act against a defendant not domiciliated in the State, before the institution of his suit, the prescription provided for by art. 2512, cannot prevail, but remains suspended during the defendant's absence ; and that the absence of such defendant from the State, not being domiciliated within its limits, can be offered as an excuse and justification on the part of the plaintiff, for not having commenced his suit sooner. This rule is precisely applicable to the present case, and the defendant's plea of perscription was, therefore, properly overruled.

*Judgment affirmed.**

*H. H. Strawbridge*, for a re-hearing. In *Gravillon* v. *Richards*, 13 La. 293, it was held that the mere *will*, combined with a few days residence, was sufficient to acquire a domicil. See also *Hennen's case*, 12 La. 190. *Waller* v. *Lea*, 8 La. 314. Sirey, vol. 13, part 2, 353. Two years had elapsed between defendant's declaration of his intention to acquire a residence, and the institution of this action ; and his *actual* residence within the State exceeded fourteen months. In the case of *Guilliet* v. *Erwin*, the *whole time* of the residence within the State did not exceed twelve months.

*Re-hearing refused.*